IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD A. HAZELTON and KELLY J. HAZELTON,

                      Appellants,

v.

UW-STOUT,

                      Appellee.

OPINION and ORDER

18-cv-159-jdp

---

Kelly Hazelton and Richard Hazelton appeal a decision of the bankruptcy court denying their motion for sanctions against UW-Stout. The question raised in the appeal is whether Kelly Hazelton's unpaid tuition to UW-Stout qualified as a "loan" under 11 U.S.C. § 523(a)(8). If it did, then the Hazeltons were not entitled to discharge the debt when they filed for bankruptcy, so UW-Stout was entitled to collect the debt. If it did not, then UW-Stout violated the discharge injunction by withholding Kelly Hazelton's diploma and seizing a tax refund to satisfy the debt. The court concludes that the debt was not a loan under § 523(a)(8), so the bankruptcy court's decision will be reversed.

BACKGROUND

In 2008, Kelly Hazelton enrolled at UW-Stout and signed the "Email Authorization/Payment Plan Agreement," which all students were required to sign. Her husband, Richard Hazelton, signed the plan too. The plan included a section called "Payments." For fall and spring semesters, the plan required students to make "a minimum down payment" for tuition and fees by "the 5th day of the term." Bankr. Dkt. 31-1, at 5. After that, half of the remaining tuition would be due "approximately one month after the beginning

of [the] term" and full payment would be due "approximately two months after the beginning of [the] term." *Id.* For summer semester, "payment [was] due in full for all courses by the end of the week of [a student's] first class." *Id.* If a student failed to make a required payment, UW-Stout would assess a finance charge and refuse requests for transcripts until payment was made. *Id.* The plan did not include an expiration date.

In 2011, Kelly Hazelton withdrew from school, but she re-enrolled in 2014 for the summer term of 2015. She did not sign a new "Payment Plan Agreement" with UW-Stout at this time. She completed seven credits of classes, but did not pay her tuition or fees for the summer term. (UW-Stout does not contend that the Hazeltons failed to pay tuition or fees for any semester other than summer 2015.) As a result of the Hazeltons' failure to pay, UW-Stout refused to issue Kelly Hazelton's degree, though she had otherwise qualified for it.

In October 2016, the Hazeltons received a discharge of their debts under Chapter 7 of the Bankruptcy Code. UW-Stout received notice of the discharge, but it still seized Kelly Hazelton's 2016 tax refund to satisfy her debt.

The Hazeltons filed an adversary proceeding in the bankruptcy court, contending that UW-Stout violated the discharge injunction by refusing to issue Kelly Hazelton's degree and seizing her tax refund.[1] She asked for a finding of contempt, actual damages, punitive damages, attorney fees, and costs. The bankruptcy court denied Hazelton's motion, concluding that UW-Stout had not violated the discharge injunction because her debt to UW-Stout was "a type of student loan" and therefore was not dischargeable under 11 U.S.C. § 523(a)(8). Dkt. 1-1, at 8.

---

[1] The Hazeltons say in their brief that UW-Stout has since issued Kelly's diploma. Dkt. 5, at 2.

ANALYSIS

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). The court reviews the bankruptcy court's conclusions of law de novo, and its findings of fact for clear error. *Adams v. Adams*, 738 F.3d 861, 864 (7th Cir. 2013).

Under 11 U.S.C. § 524, a creditor is barred from attempting to collect a discharged debt. There is no dispute that UW-Stout made efforts to collect the Hazeltons' debt when UW-Stout seized Kelly Hazelton's tax refund and refused to issue her diploma for nonpayment. The question raised in this appeal is whether the Hazeltons' debt to UW-Stout was excluded from the discharge. UW-Stout says that it was, relying on two provisions, both of which make certain kinds of educational loans nondischargeable. First, § 523(a)(8)(A)(i) applies to "an educational . . . loan made . . . by a governmental unit." Second, § 523(a)(8)(B) applies to "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986."[2]

The parties devote a significant portion of their briefs to the question whether the Hazeltons' debt satisfies the definition of "qualified education loan" in § 221(d)(1), but the court need not consider that issue separately. Because § 523(a)(8)(B) states that a "qualified education loan" is simply one type of "other educational loan," a debt cannot satisfy the definition in § 221(d)(1) unless it first qualifies as an "educational loan" as a general matter within the meaning of both (a)(8)(A)(i) and (a)(8)(B). *See In re Oliver*, 499 B.R. 617, 623 (Bankr. S.D. Ind. 2013) ("[T]here is a two-tiered analysis [under § 523(a)(8)(B)]: first, whether

---

[2] Section 523(a)(8)(A)(ii) applies to "an obligation to repay funds received as an educational benefit, scholarship, or stipend," but UW-Stout does not contend that the exception applies to the Hazeltons' debt.

a debt is an educational 'loan' and, if it is, then whether it meets the Internal Revenue Code definition of 'qualified education loan.'"). And because the court concludes that the debt at issue is not a "loan" at all, the debt was not subject to the discharge exception in § 523(a)(8)(A)(i) or (a)(8)(B).

*In re Chambers*, 348 F.3d 650 (7th Cir. 2003), is controlling. The court held that "nonpayment of tuition qualifies as a loan" under § 523(a)(8) "in two classes of cases: where funds have changed hands, or where there is an agreement whereby the college extends credit. . . . This existence of a separate agreement acknowledging the transfer and delaying the obligation for repayment distinguishes a loan from a mere unpaid debt." *Id.* at 657 (internal quotations, citations, alterations omitted). The *Chambers* court concluded that the student's debt in that case did not satisfy this definition because "[n]o funds changed hands" and there was no evidence of "a prior or contemporaneous agreement to pay tuition at a later date in exchange for an extension of credit." *Id.* Rather, the student "incurred a debt on an open student account, attended classes in spite of the debt and failed to pay her bill." *Id.*

The material facts of this case are indistinguishable from those in *Chambers*, a case the bankruptcy court did not discuss. It is undisputed that "no funds changed hands" between UW-Stout and the Hazeltons. And there is no evidence that the parties had a "contemporaneous agreement to pay tuition at a later date in exchange for an extension of credit." *Id.* UW-Stout says that the "Email Authorization/Payment Plan Agreement" qualifies as such an agreement, but its argument is not persuasive. The court will assume that the agreement the Hazeltons signed in 2008 was still in effect in 2014. But UW-Stout hasn't shown that the agreement is an extension of credit in exchange for deferred payment, at least as to summer tuition, which is all that is at issue in this case. The agreement simply requires

4

all students to pay tuition in full by the first week of classes. Despite its name, the agreement is not a "payment plan" for summer tuition. UW-Stout fails to explain how imposing a payment deadline on all students at the beginning of semester qualifies as an extension of credit in exchange for deferred payment.

UW-Stout says that *Chambers* is not controlling because Congress amended § 523(a)(8) after that case to add § 523(a)(8)(B). But the relevant language in the statute is still the same: both the previous version of § 523(a)(8) and the current version of both § 523(a)(8)(A)(i) and § 523(a)(8)(B) apply to "educational loans." As several courts have noted, nothing in § 523(a)(8)(B) affected the understanding in *Chambers* of what qualifies as a "loan." *Oliver*, 499 B.R. at 624 ("[N]otwithstanding the . . . amendments to § 523(a)(8) made after *Chambers*, the Court still must decide whether the Debt arises from a loan made by [the university] to Debtor using the *Chambers* framework."). *See also In re Creeger,* No. 14-34053, 2016 WL 3049972, at *8 (Bankr. N.D. Ohio May 20, 2016) ("Congress retained the phrase 'any other educational loan' at the beginning of § 523(a)(8)(B), which makes it clear that for an 'educational loan' to be excepted from discharge, it must still be a loan. This retains a distinction made in pre-[amendments] case law.") (citation omitted); *In re Girdlestone*, 525 B.R. 208, 211 (Bankr. W.D.N.Y. 2015) ("By retaining the phrase 'any other educational loan' [in § 523(a)(8)(B),] it appears that Congress has not departed from the notion that a 'student loan' excepted from discharge must still be a loan.") (internal quotations and alterations omitted).

UW-Stout has not shown that it gave the Hazeltons a loan for Kelly Hazelton's summer tuition, which means that UW-Stout has not shown that the Hazeltons' debt to UW-Stout was excluded from their bankruptcy discharge. So UW-Stout violated the discharge injunction when it continued making efforts to collect the debt after the discharge, and the bankruptcy's

contrary conclusion will be reversed. The Hazeltons also ask this court to find UW-Stout in contempt and award damages, fees, and costs. But the court declines to consider those arguments because the Hazeltons don't develop them. They are free to raise those issues with the bankruptcy court in the first instance.

ORDER

IT IS ORDERED that the decision of the bankruptcy court denying the motion for sanctions filed by Richard Hazelton and Kelly Hazelton is REVERSED and REMANDED for further proceedings consistent with this opinion.

Entered February 1, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge